# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2802

_____

United States of America

*Plaintiff - Appellee*

v.

Tre Joseph Connor

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: June 13, 2025
Filed: June 27, 2025
[Unpublished]

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Two years ago, a masked man carrying a pistol walked into River Region Credit Union, leapt over the counter, and directed an employee to open the vault, from which he made off with over a hundred thousand dollars. A jury found that Tre Connor was that man and convicted him of bank robbery, brandishing a firearm during and in relation to bank robbery, and possessing a firearm as a felon. 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A)(ii), 2113(a). Connor maintains that the

evidence was insufficient to identify him as the robber or establish that he possessed the pistol named in his indictment. But the district court[1] was unconvinced, and, having reviewed the evidence for ourselves, so are we. We therefore affirm.

Connor's apparel and physical characteristics matched the robber's as depicted in surveillance video of the robbery. Shortly before the robbery, Connor purchased a black backpack with the same tan trim and white liner as the one the robber carried and AND1-branded sweatpants like the ones the robber wore. Investigators also found a shoebox for sneakers of the same style as the robber's in Connor's home. And the jury heard testimony that Connor was athletic enough to jump over a tall obstacle as the robber did.

Additional evidence indicated that Connor was near the scene of the crime during its commission. Video recordings revealed that a black car with a missing hubcap turned onto the road behind the credit union just before the robbery and retraced its path just after the robbery on its way toward Connor's neighborhood. This was a ringer for the car that Connor drove when he bought the backpack and sweatpants, from which investigators recovered a wallet containing Connor's driver's license.

There was also evidence that Connor acted like a robber after the robbery occurred. He paid cash to stay in a hotel the night of the robbery even though he had a home in the same city. And within days of the robbery, he started making or attempting to make a number of unusually large gifts or purchases.

But what really cemented the identification of Connor as the robber was information extracted from his phones showing that he planned the robbery. Or at least a reasonable jury could so find. In the weeks before the robbery, Connor's phones registered numerous searches for guidance on committing a robbery and

---

[1] The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

getting away with it, along with searches for credit unions in his area and for River Region Credit Union specifically. A digitized note uploaded on the day that Connor bought the black backpack and AND1-branded sweatpants had the look of a shopping list for items the robber used, including not only a backpack and sweatpants but also a mask, gloves, a hoodie, and a "glizzy," or gun. And searches registered after the robbery reflected ongoing interest in the investigation of bank robberies and the River Region Credit Union robbery in particular. Nothing we might say could more effectively convey the strength of the search evidence, not to speak of the note, than one of the registered queries: "Can you delete your search history on Google?"

We cannot accept Connor's defense that the government failed to prove his responsibility for the data on his phones. A forensic investigator testified that the phones were password-protected, that Connor was their primary user, and that there was no evidence of secondary users. It would be remarkable if the weeks' worth of inculpatory data on the phones accumulated because someone other than Connor used them. At minimum, even if the existence of one or more alternative users is "within the realm of possibility," that does "not give us reason to overturn the jury's verdict." *See United States v. Burch*, 113 F.4th 815, 822 (8th Cir. 2024).

There is equally little merit in Connor's attempt to pin the robbery on his brother. There is no evidence that his brother ever possessed any apparel like the robber's, drove any car like the one that was present near the credit union during the robbery, engaged in any suspicious activity after the robbery, or used either of Connor's phones from which investigators extracted information. All of that evidence pointed to Connor alone. Having reviewed it, the jury could easily find that he was the robber beyond a reasonable doubt. *See United States v. Redmond*, 2024 WL 4541810, at *2 (8th Cir. Oct. 22, 2024) (unpublished per curiam); *cf. United States v. Lowen*, 647 F.3d 863, 869 (8th Cir. 2011).

From that finding there was only a small step to the jury's finding that Connor possessed the pistol named in his indictment. An investigator matched the

make of that pistol, which investigators discovered at his grandparents' home, to the make of the pistol that the robber carried. And cell site location data put Connor at the home shortly after the robbery. Accepting, as it did, that Connor was the robber, the jury could find beyond a reasonable doubt that the robber's pistol and the pistol found in the home were one and the same and that Connor possessed it before leaving it with his grandparents. That his grandfather had locked up the pistol by the time investigators searched the home hardly compels a different conclusion, Connor's protestations to the contrary notwithstanding.

Affirmed.

_____